UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUXOTTICA GROUP S.p.A., an Italian corporation, OAKLEY, INC., a Washington corporation, and COSTA DEL MAR, INC., a Florida corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>ANTHONY LONGO D/B/A SHADY SHADES, TRAPANI RACE SETUPS, INC., a New Jersey corporation, GEORGE TRAPANI, SHELTERED COVE MARINA, INC., a New Jersey corporation, MARK HATTMAN, and LUIGI ESPOSITO d/b/a MYSTIC ISLAND PIZZA,<br><br>        Defendants. | Civil Action No. 3:26-cv-1165<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Luxottica Group S.p.A., Oakley, Inc., and Costa Del Mar, Inc. (collectively, "Plaintiffs"), through their undersigned counsel, sue Defendants Anthony Longo, Trapani Race Setups, Inc., George Trapani, Sheltered Cove Marina, Inc., Mark Hattman, and Luigi Esposito (together "Defendants"), and allege:

**INTRODUCTION**

1.      This lawsuit arises from the theft of Plaintiffs' intellectual property by Defendants' promotion and sale of sunglasses bearing counterfeits of Plaintiffs' Ray-Ban, Oakley and Costa federally registered trademarks (the "Counterfeit Merchandise"). Defendants have been advertising, offering for sale and selling Counterfeit Merchandise via their online and/or retail storefronts in the State of New Jersey.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the parties and over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because it involves trademark claims arising under 15 U.S.C. § 1114 (the "Lanham Act").

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over each of the Defendants since they are residents of this State and they have committed tortious acts in this State. Moreover, a substantial part of the events giving rise to the claims occurred in this Judicial District.

## PARTIES

4.      Plaintiff, Luxottica Group S.p.A. ("Luxottica Group") is an Italian corporation with a principal place of business in Milan, Italy.

5.      Plaintiff, Oakley, Inc. ("Oakley") is a corporation organized and existing under the laws of the State of Washington, having a principal place of business in Foothill Ranch, California. Oakley is an indirect, wholly owned subsidiary of Luxottica Group S.p.A.

6.      Plaintiff, Costa del Mar, Inc. ("Costa") is a corporation organized and existing under the laws of the State of Florida, having a principal place of business in Daytona, Beach, Florida.  Costa is an indirect, wholly owned subsidiary of FGX International, Inc.

7.      Defendant, Anthony Longo is a resident of Little Egg Harbor Twp., New Jersey. Longo operates an online retail business under the trade name "Shady Shades" through which he has advertised, offered for sale and sold Counterfeit Merchandise to both end-user consumers as well as to third-party retailers located in New Jersey for the purpose of resale.  As alleged herein, the Counterfeit Merchandise offered for sale and sold by the other Defendants identified herein

2

was sourced from Longo. Accordingly, Defendant Longo has directly and contributorily engaged in the sale of Counterfeit Merchandise within this Judicial District.

8.      Defendant, Trapani Race Setups, Inc. is a corporation registered and authorized to do business in the State of New Jersey. Defendant Trapani Race Setups operates an automotive accessories store located at 529 Route 9, Waretown Plaza, Waretown, New Jersey, 08758.

9.      Defendant, George Trapani is a resident of Ocean County, New Jersey. Trapani is the owner, officer, director and manager of Defendant Trapani Race Setups and the moving force behind that entity's operations and infringing activities.

10.      Defendant, Sheltered Cove Marina, Inc. is a corporation registered and authorized to do business in the State of New Jersey. Defendant Sheltered Cove Marina operates a marina located at 910 S. Green St., Tuckerton, New Jersey, 08087.

11.      Defendant, Mark Hattman is a resident of Atlantic County, New Jersey. Hattman is the owner, officer, director and manager of Defendant Sheltered Cove Marina and the moving force behind that entity's operations and infringing activities.

12.      Defendant, Luigi Esposito is a resident of Little Egg Harbor Twp., New Jersey. Esposito owns and operates a restaurant under the tradename "Mystic Island Pizza", which establishment is located at 841 Radio Rd., Little Egg Harbor, NJ 08087.

## FACTUAL ALLEGATIONS

**A.      The World-Famous Luxottica Brands and Products.**

13.      Luxottica Group is engaged in the manufacture, marketing and sale of premium, luxury and sports eyewear throughout the world. Luxottica Group's proprietary brands include Ray-Ban, the world's most famous sun eyewear brand, as well as Vogue Eyewear, Persol, Oliver Peoples, Alain Mikli and Arnette, among others.

14.     Through its affiliates and subsidiaries, Luxottica Group operates over 7,000 optical and sun retail stores, including LensCrafters, Pearle Vision and ILORI in North America, OPSM and Laubman & Pank in Asia-Pacific, LensCrafters in China, GMO in Latin America and Sunglass Hut worldwide.

15.     Luxottica Group's Ray-Ban products are distributed and sold through its optical and sun specialty retail stores, authorized retail and department stores, and via its various websites, including www.ray-ban.com, throughout the United States, including New Jersey.

16.     Luxottica Group has used a variety of legally protected trademarks for many years on and in connection with the advertisement and sale of its Ray-Ban products, including but not limited to those detailed in this Complaint.

17.     Luxottica Group has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Ray-Ban Trademarks (defined below).  As a result, products bearing the Ray-Ban trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Luxottica Group, and have acquired strong secondary meaning.

18.     Luxottica Group is the owner of various trademarks under the Ray-Ban brand, including, but not limited to, the following United States Federal Trademark Registrations (collectively, the "Ray-Ban Trademarks"), which are at issue in this lawsuit:

| Registration **Number** | **Trademark** | **Good and Services** |
|---|---|---|
| 650,499 | Ray-Ban | For: sunglasses, shooting glasses and ophthalmic lenses in class 9. |
| 1,093,658 | Ray-Ban | For: ophthalmic products and accessories – namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles and goggles; and cases and other protective covers for sunglasses, eyeglasses, spectacles in class 9. |
| 1,080,886 | **RAY-BAN** | For: ophthalmic products and accessories – namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles in class 9. |
| 3,522,603 | Ray-Ban | For: sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, cases for eyeglasses in class 9. |
| 1,511,615 | LUXOTTICA ☆☆ | For: eyeglasses, sunglasses, temples and eyeglass frames in class 9. |
| 2,971,023 | RB | For: sunglasses, eyeglasses, eyeglass lenses in class 9. |
| 590,522 | G-15 | For: Sunglasses and ophthalmic lenses, in class 9. |
| 1,320,460 | Ray-Ban | For: protective cases and covers in class 9. |

5

19.    Luxottica Group has long been manufacturing and selling eyewear in interstate commerce under the Ray-Ban Trademarks.[1]  These registrations are valid and subsisting and the majority are incontestable.

20.    The registration of the Ray-Ban Trademarks constitutes prima facie evidence of their validity and conclusive evidence of Luxottica Group's exclusive right to use the Ray-Ban Trademarks in connection with the goods identified therein and other commercial goods.

21.    The registration of the Ray-Ban Trademarks also provides constructive notice to Defendants of Luxottica Group's ownership and exclusive rights in the Ray-Ban Trademarks.

22.    The Ray-Ban Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

23.    The Ray-Ban Trademarks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

**B.    The World-Famous Oakley Brand and Products.**

24.    Oakley is an internationally recognized manufacturer, distributor and retailer of sports eyewear, apparel, footwear, outerwear, jackets, accessories and other related merchandise.

25.    Oakley products are distributed and sold to consumers through its own Oakley O stores, its affiliate's sun retail stores, authorized retailers, and via its internet website: www.oakley.com throughout the United States, including New Jersey.

---

[1] All registrations originally held in the name of Luxottica Group's predecessor's owner of the Ray-Ban Trademarks, Bausch and Lomb, were assigned in full to Luxottica Group in 1999.

26.     Oakley has used a variety of legally protected trademarks for many years on and in connection with the advertisement and sale of its Oakley products, including but not limited to those detailed in this Complaint.

27.     Oakley has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Oakley Trademarks (defined below).  As a result, products bearing the Oakley Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Oakley and have acquired strong secondary meaning.

28.     Oakley is the owner of various trademarks under the Oakley brand, including, but not limited to, the following United States Federal Trademark Registrations (collectively, the "Oakley Trademarks"), among others, which are at issue in this lawsuit:

| Registration Number | Trademark | Good and Services |
|---|---|---|
| 1,984,501 | | For: protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, ear stems, frames, nose pieces and foam strips in class 9. |
| 1,519,596 | OAKLEY | For: sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 3,151,994 | | For: protective eyewear, namely spectacles, prescription eyewear, anti-glare glasses and sunglasses and their parts and accessories in class 9. |
| 4,194,197 | FROGSKINS | For: eyewear, namely, sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems [ and nose pieces ] in class 9. |

29.     Oakley has long been manufacturing and selling in interstate commerce eyewear under the Oakley Trademarks.  These registrations are valid and subsisting and the majority are incontestable.

30.     The registration of the Oakley Trademarks constitutes prima facie evidence of their validity and conclusive evidence of Oakley's exclusive right to use the Oakley Trademarks in connection with the goods identified therein and other commercial goods.

31.     The registration of the Oakley Trademarks also provides constructive notice to Defendants of Oakley's ownership and exclusive rights in the Oakley Trademarks.

32.     The Oakley Trademarks qualify as famous trademarks, as that term is used in 15 U.S.C. § 1125(c)(1).

33.     The Oakley Trademarks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

## C.     The World-Famous Costa Brand and Products.

34.     The Costa eyewear brand was born in Daytona Beach, Florida in 1983.

35.     Costa has continuously sold Costa branded products, including eyewear, apparel, and other related merchandise through its authorized retailers and via its internet website: www.costadelmar.com throughout the United States, including New Jersey.

36.     Costa has used a variety of legally protected trademarks for many years on and in connection with the advertisement and sale of its Costa products, including but not limited to, those detailed in this Complaint.

37.     Costa has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Costa Trademarks (defined below).  As a result, products bearing the Costa Trademarks are widely recognized and exclusively associated by consumers, the

8

public, and the trade as being high quality products sourced from Costa and have acquired strong secondary meaning.

38.    Costa is the owner of various trademarks under the Costa brand, including, but not limited to, the following United States Federal Trademark Registrations (collectively, the "Costa Trademarks"), among others, which are at issue in this lawsuit:

| Registration Number | Trademark | Good and Services |
|---|---|---|
| 3,857,379 | COSTA | For: sunglasses and sunglass frames in class 9. |
| 3,273,228 |  | For: sunglasses, sunglass frames, sunglass lenses in class 9. |

39.    Costa has long been manufacturing and selling in interstate commerce eyewear under the Costa Trademarks.  These registrations are valid and subsisting.

40.    The registration of the Costa Trademarks constitutes prima facie evidence of their validity and conclusive evidence of Costa's exclusive right to use the Costa Trademarks in connection with the goods identified therein and other commercial goods.

41.    The registration of the Costa Trademarks also provides constructive notice to Defendants of Costa's ownership and exclusive rights in the Costa Trademarks.

42.    The Costa Trademarks qualify as famous trademarks, as that term is used in 15 U.S.C. § 1125(c)(1).

43.    The Costa Trademarks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

**D.      Defendants' Infringing Activities.**

44.      On July 3, 2025, Plaintiffs' investigator visited Defendant Longo's website (www.shadyshades.org) and discovered that Longo was advertising, publicly displaying, and offering for sale sunglasses bearing logos and source-identifying indicia and design elements that are imitations of one or more of the Ray-Ban, Oakley and Costa Trademarks.

45.      Plaintiffs' investigator purchased two pairs of Costa branded sunglasses, one pair of Ray-Ban branded sunglasses, and one pair of Oakley branded sunglasses and paid $20.00 for each pair of sunglasses. Photographs of the sunglasses purchased on July 3, 2025, are depicted below.









46.    On September 11, 2025, Plaintiffs' investigator visited Defendant Trapani Race Setups' retail store located at 529 Route 9, Waretown, NJ 08758. During that visit, the investigator discovered that Defendant Trapani Race Setups was advertising, publicly displaying, and offering for sale numerous sunglasses bearing logos and source-identifying indicia and design elements that are imitations of one or more of Ray-Ban Trademarks.

47.    Plaintiffs' investigator purchased one pair of Ray-Ban branded sunglasses for $24.99. The sale was consummated by Defendant Trapani. Photographs of the sunglasses purchased on September 11, 2025, are depicted below:







48.    Defendant Trapani was directly involved in approving the purchase and sale of the Counterfeit Merchandise, and therefore, he was a direct participant in the infringing activities of Trapani Race Setups.

49.    On September 11, 2025, Plaintiffs' investigator visited Sheltered Cove Marina located at 1910 Green St., Tuckerton, NJ 08087.  During that visit, the investigator discovered that Sheltered Cove Marina was advertising, publicly displaying, and offering for sale numerous sunglasses bearing logos and source-identifying indicia and design elements that are imitations of one or more of the Oakley Trademarks.

50.    Plaintiffs' investigator purchased one pair of Oakley branded sunglasses for $21.32. Photographs of the sunglasses purchased on September 11, 2025, are depicted below:





51.     Upon information and belief, Defendant Hattman was directly involved in approving the purchase and sale of the Counterfeit Merchandise, and therefore, he was a direct participant in the infringing activities of Sheltered Cove Marina, LLC.

52.     On September 11, 2025, Plaintiffs' investigator visited Defendant Esposito's restaurant located at 841 Radio Rd., Little Egg Harbor, NJ 08087.  During that visit, the investigator discovered that Esposito was advertising, publicly displaying, and offering for sale sunglasses bearing logos and source-identifying indicia and design elements that are imitations of one or more of the Oakley Trademarks.

53.    Plaintiffs' investigator purchased one pair of Oakley branded sunglasses for $20.00.

Photographs of the sunglasses purchased on September 11, 2025, are depicted below:





54.    On October 30, 2025, Plaintiffs' investigator returned to Defendant Trapani's retail store located at 529 Route 9, Waretown, NJ 08758.  During that visit, the investigator discovered that Defendant Trapani Race Setups was advertising, publicly displaying, and offering for sale sunglasses bearing logos and source-identifying indicia and design elements that are imitations of one or more of Ray-Ban Trademarks.

55.    Plaintiffs' investigator purchased one pair of Ray-Ban branded sunglasses for $24.99.  The sale was consummated by Defendant Trapani.  Photographs of the counterfeit sunglasses purchased on October 30, 2025, are depicted below.







56.     Defendant Trapani was directly involved in approving the purchase and sale of the Counterfeit Merchandise, and therefore, he was a direct participant in the infringing activities of Trapani Race Setups.

57.     On October 30, 2025, Plaintiffs' investigator returned to Defendant Esposito's business location at 841 Radio Rd., Little Egg Harbor, NJ 08087.  During that visit, the investigator discovered that Esposito was advertising, publicly displaying, and offering for sale sunglasses bearing logos and source-identifying indicia and design elements that are imitations of one or more of the Ray-Ban, Oakley and Costa Trademarks.

58.     Plaintiffs' investigator purchased one pair each of Oakley, Ray-Ban and Costa branded sunglasses for a total of $60.00.  The salesperson that consummated the transaction on behalf of Esposito told the investigator, in part: "*[t]he guy who sells them works at a local marina and makes money on the side. I have a pair myself, and I think they are better than the real ones*."  Photographs of the sunglasses purchased on October 30, 2025, are depicted below.









59.     Luxottica Group, on behalf of itself, Oakley and Costa subsequently inspected the items that were sold by each of the Defendants and determined that the Ray-Ban, Oakley and Costa Trademarks affixed to the sunglasses are either incorrect or inconsistent with the Ray-Ban, Oakley and Costa Trademarks found on similar products bearing authentic Ray-Ban, Oakley and Costa Trademarks.

60.     Plaintiffs also determined that the items purchased from each of the Defendants infringed one or more of their respective Ray-Ban, Oakley and Costa Trademarks and bore reproductions of marks that are identical with, or substantially indistinguishable from one or more of the Ray-Ban, Oakley and Costa Trademarks.

61.     Plaintiffs did not manufacture, and they did not authorize anyone to manufacture any of the counterfeit Ray-Ban, Oakley or Costa trademarked products that were sold by Defendants as identified herein.

62. Defendants do not have a license, authority, or other permission from Plaintiffs to use their respective Ray-Ban, Oakley or Costa Trademarks in connection with the advertising, promoting, offering for sale or sale of the Counterfeit Merchandise.

63. Each of the Defendants actions, as described above, constitute direct trademark infringement in violation of the Lanham Act.

64. Defendant Longo facilitated and contributed to the counterfeiting activities of Defendants Trapani Race Setups, Trapani, Sheltered Cove Marina, Hattman and Esposito by supplying them with the Counterfeit Merchandise for the sole purpose of resale.

65. Defendants' actions, as described above, are intended to cause confusion or mistake, and to deceive consumers, the public, and the trade into believing that the Counterfeit Merchandise offered for sale are authentic or authorized products of Luxottica Group, Oakley and Costa.

66. Defendants' actions, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Counterfeit Merchandise and Ray-Ban, Oakley and Costa.

67. Defendants are aware of the extraordinary fame and strength of Ray-Ban, Oakley and Costa brands, the Ray-Ban, Oakley and Costa Trademarks, and the incalculable goodwill associated therewith.

68. Defendants' knowing and deliberate hijacking of Plaintiffs' famous marks and offer for sale of Counterfeit Merchandise has caused substantial and irreparable harm to Plaintiffs' goodwill and their reputations. In addition, the damage caused by Defendants is especially severe because the Counterfeit Merchandise is cheap and inferior in quality to products bearing authentic Ray-Ban, Oakley and Costa Trademarks.

69.     Plaintiffs seek damages as a result of Defendants' knowing, deliberate and willful disregard of the activities infringing the Ray-Ban, Oakley and Costa Trademarks.

**COUNT I**
**(15 U.S.C. § 1114)**
**(Trademark Infringement – Trapani Race Setups and Trapani)**

70.     Plaintiff Luxottica Group repeats and re-alleges the allegations set forth in Paragraphs 1 through 69 above.

71.     This is a trademark infringement action against Trapani Race Setups and Trapani based on their unauthorized use in commerce of reproductions of marks that are identical with, or substantially indistinguishable from one or more of the Ray-Ban Trademarks.

72.     Trapani Race Setups and Trapani have promoted, advertised, and offered for sale products bearing counterfeits of one or more of the Ray-Ban Trademarks without Luxottica Group's permission and without any compensation to Luxottica Group.

73.     The foregoing acts of Trapani Race Setups and Trapani are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Counterfeit Merchandise offered for sale and/or sold by Trapani Race Setups and Trapani are authentic or authorized products of Luxottica Group.

74.     Trapani Race Setups' and Trapani's activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Counterfeit Merchandise and Luxottica Group

75.     Trapani Race Setups and Trapani have directly and willfully infringed Luxottica Group's Ray-Ban Trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT II
## (15 U.S.C. § 1114)
## (Contributory Trademark Infringement – Longo)

76.     Plaintiff Luxottica Group repeats and re-alleges the allegations set forth in Paragraphs 1 through 69 above.

77.     Trapani Race Setups and Trapani have committed acts of direct trademark infringement.

78.     Longo supplied the means by which Trapani Race Setups and Trapani could engage in the illegal activity described in this Complaint.

79.     Longo had actual knowledge that the Counterfeit Merchandise that he supplied to Trapani Race Setups and Trapani would be offered for sale and sold.

80.     Longo also knew that Trapani Race Setups and Trapani were directly infringing Luxottica Group's Ray-Ban's Trademarks.

81.     As a result, Longo willfully and contributorily infringed Luxottica Group's Ray-Ban Trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT III
## (15 U.S.C. § 1114)
## (Trademark Infringement – Sheltered Cove and Hattman)

82.     Plaintiff Oakley, Inc. repeats and re-alleges the allegations set forth in Paragraphs 1 through 69 above.

83.     This is a trademark infringement action against Sheltered Cove Marina and Hattman based on their unauthorized use in commerce of reproductions of marks that are identical with, or substantially indistinguishable from one or more of the Oakley Trademarks.

84.     Sheltered Cove Marina and Hattman have promoted, advertised, and offered for sale products bearing counterfeits of one or more of the Oakley Trademarks without Oakley's permission and without any compensation to Oakley, Inc.

85.     The foregoing acts of Sheltered Cove Marina and Hattman are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Counterfeit Merchandise offered for sale and/or sold by Sheltered Cove Marina and Hattman are authentic or authorized products of Oakley.

86.     Sheltered Cove Marina and Hattman's activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Counterfeit Merchandise and Oakley.

87.     Sheltered Cove Marina and Hattman have directly and willfully infringed Oakley's trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**COUNT IV**
**(15 U.S.C. § 1114)**
**(Contributory Trademark Infringement – Longo)**

88.     Plaintiff Oakley, Inc. repeats and re-alleges the allegations set forth in Paragraphs 1 through 69 above.

89.     Sheltered Cove Marina and Hattman have committed acts of direct trademark infringement.

90.     Longo supplied the means by which Sheltered Cove Marina and Hattman could engage in the illegal activity described in this Complaint.

91.     Longo had actual knowledge that the Counterfeit Merchandise that he supplied to Sheltered Cove Marina and Hattman would be offered for sale and sold.

92.     Longo also knew that Sheltered Cove Marina and Hattman were directly infringing Oakley's trademarks.

93.     As a result, Longo willfully and contributorily infringed Oakley's Trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT V
### (15 U.S.C. § 1114)
### (Trademark Infringement – Esposito)

94.     Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 above.

95.     This is a trademark infringement action against Esposito based on his unauthorized use in commerce of reproductions of marks that are identical with, or substantially indistinguishable from one or more of the Ray-Ban, Oakley and Costa Trademarks.

96.     Esposito has promoted, advertised, and offered for sale products bearing counterfeits of one or more of the Ray-Ban, Oakley and Costa Trademarks without Plaintiffs' permission and without any compensation to the Plaintiffs.

97.     The foregoing acts of Esposito are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Counterfeit Merchandise offered for sale and/or sold by Esposito are authentic or authorized products of Plaintiffs

98.     Esposito's activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Counterfeit Merchandise and Plaintiffs.

99.     Esposito has directly and willfully infringed Plaintiffs' trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT VI
### (15 U.S.C. § 1114)
### (Contributory Trademark Infringement – Longo)

100.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 above.

101.    Esposito has committed acts of direct trademark infringement.

102.    Longo supplied the means by which Esposito could engage in the illegal activity described in this Complaint.

103.    Longo had actual knowledge that the Counterfeit Merchandise that he supplied to Esposito would be offered for sale and sold.

104.    Longo also knew that Esposito was directly infringing Plaintiffs' trademarks.

105.    As a result, Longo willfully and contributorily infringed Plaintiffs' Trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT IX
### (15 U.S.C. § 1114)
### (Trademark Infringement – Longo)

106.    Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 69 above.

107.    This is a trademark infringement action against Longo based on his unauthorized use in commerce of reproductions of marks that are identical with, or substantially indistinguishable from one or more of Plaintiffs' Trademarks.

108.    Longo has promoted, advertised, and offered for sale products bearing counterfeits of one or more of the Plaintiffs' Trademarks without Plaintiffs' permission and without any compensation to the Plaintiffs.

109.     The foregoing acts of Longo are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Counterfeit Merchandise offered for sale and/or sold by Longo are authentic or authorized products of Plaintiffs.

110.     Longo's activities, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Counterfeit Merchandise and Plaintiffs.

111.     Longo has directly and willfully infringed Plaintiffs' trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Luxottica Group S.p.A., Oakley, Inc., and Costa Del Mar, Inc. respectfully request that this Court enter judgment in their favor and against Defendants Anthony Longo, Trapani Race Setups, Inc., George Trapani, Sheltered Cove Marina, Mark Hattman, and Luigi Esposito as follows:

A.     Finding that: Defendants have violated Section 32 of the Lanham Act (15 U.S.C. §§ 1114);

B.     Awarding Plaintiffs statutory damages for willful trademark infringement in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117(c));

C.     Awarding Plaintiff such additional and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury in this matter.

Dated: February 5, 2026

Respectfully submitted,

s/ *Steven M. Lucks*
Steven M. Lucks
FISHKIN LUCKS LLP
One Gateway Center, Suite 1150
Newark, NJ 07102
(973) 536-2800
slucks@fishkinlucks.com

-and

/s/ David B. Rosemberg
David B. Rosemberg (Fla. Bar. 0582239)
(*pro hac vice motion to be filed*)
**ROSEMBERG LAW**
20200 W. Dixie Hwy., Suite 602
Aventura, FL 33180
Ph: 305.602.2008
Fax: 305.602.0225
Email: david@rosemberglaw.com

*Counsel for Plaintiffs Luxottica Group S.p.A.,*
*Oakley, Inc., and Costa Del Mar, Inc.*